BLAS COLÓN ALVARADO, ETC., demandantes y recurridos, *v.* CORPORACIÓN MUNICIPAL DE BARRANQUITAS, demandada y recurrente.

*Número:* R-64-227     *Resuelto:* 31 de enero de 1966

*J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de la recurrente; *Amancio Arias Cestero* y *Enrique Leo Henríquez,* abogados de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

PER CURIAM: Al determinar que el municipio recurrente era responsable a la parte demandante recurrida el juez a quo relató el accidente ocurrido en las siguientes palabras: "(1) El día 30 de octubre de 1962 Jesús Ortiz Jiménez, empleado del Municipio de Barranquitas, en funciones de su empleo como tal, operando un tractor propiedad de dicho municipio estaba abriendo un camino en una finca propiedad del demandante Blas Colón Alvarado. A las 9:30 más o menos de la mañana, Roberto Colón Ortiz, un menor hijo de Blas Colón Alvarado [contaba entonces 16 años], fue a llevar café a Jesús Ortiz Jiménez y a su ayudante José López. Jesús Ortiz Jiménez detuvo la marcha del tractor pero dejó encendido el motor mientras tomaba el café que le había sido llevado por Roberto Colón Ortiz. Luego de haberse tomado el café y entregado la taza a su ayudante José López, continuó su trabajo. Mientras el tractor conducido por Jesús Ortiz Jiménez caminaba hacia el frente, Roberto Colón Ortiz fue a cruzar de izquierda a derecha por la parte posterior del tractor. Súbitamente el conductor del tractor Jesús Ortiz Jiménez, dio marcha hacia atrás lanzando al suelo al menor Roberto Colón Ortiz y arrollándolo con las cadenas que impulsan al tractor." A base de estos hechos probados, concluyó que el accidente se debió a la exclusiva negligencia del conductor, "quien al dar marcha hacia atrás al tractor que conducía no miró en esa dirección y conociendo la presencia del menor . . . en el lugar donde se realizaba el trabajo no tomó

precaución alguna para evitar el accidente". Dictó sentencia concediendo una indemnización de $25,000 al menor, $5,000 a su padre y $500 para honorarios de abogado.

En el presente recurso se apuntan varios errores que en esencia (1) plantean la inexistencia de responsabilidad por parte del municipio, o en la alternativa, la concurrencia de negligencia del lesionado; (2) impugnan la determinación sobre la conducta súbita del conductor al darle marcha hacia atrás al tractor; y, (3) se quejan de que la compensación concedida fue excesiva.

■ La determinación del tribunal de instancia al efecto de que la actuación del conductor al dar marcha atrás al tractor fue súbita encuentra base suficiente en la prueba, pero aunque así no fuese, tal hecho por sí sólo no liberaría de responsabilidad al municipio demandado. Aceptando que el acto del conductor no hubiese sido súbito, convenimos en que era su obligación anticipar la probabilidad de que el menor estuviera en las inmediaciones del tractor y tomar la precaución mínima de advertir o no su presencia, bien personalmente o por medio de su ayudante. Es simplemente un caso en que entra en juego el criterio de previsibilidad. *Weber* v. *Mejías*, 85 D.P.R. 76 (1962); cf. *Martínez* v. *Comunidad M. Fajardo*, 90 D.P.R. 461 (1964). No estamos resolviendo ahora, como se intima en la opinión disidente, que en la operación de un tractor no se exige invariablemente que el conductor mire hacia atrás en todas las ocasiones en que intente hacerlo cejar como parte usual de su labor, simplemente que bajo las circunstancias de este caso, tal precaución era imprescindible pues la presencia del menor tenía que haber sido advertida pues momentos antes le había llevado alimentos al operador y a su ayudante.

■ Ahora bien, el relato que hemos hecho del accidente señala que el joven lesionado fue imprudente al colocarse en una situación de peligro. No se trata de un niño de tierna edad sino de un mozalbete de 16 años que conocía y estaba

familiarizado con la forma en que funcionaba el tractor. Dispondremos que se reduzca proporcionalmente la compensación en un cuarenta por ciento.

Atendidas las lesiones recibidas—fractura de la pelvis, fractura conminuta del femur derecho, fracturas de la fíbula de la pierna derecha y de la tibia y fíbula de la izquierda—y otros factores, como el tratamiento penoso y prolongado, la limitación fisiológica resultante y el atraso en las aulas de dos años, la valoración de los daños no resulta excesiva ni irrazonable. Tampoco lo es la concedida a su padre.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Ramírez Bages disintió.

—O—

Disiento de la opinión *Per Curiam* dictada en este caso, en particular de la conclusión al efecto de que "era su obligación [del conductor del tractor] anticipar la probabilidad de que el menor estuviera en las inmediaciones del tractor y tomar la precaución mínima de advertir o no su presencia, bien personalmente o por medio de su ayudante." A mi juicio la prueba no la sostiene.

El lesionado, un mozalbete de 16 años, originalmente describió el accidente en cuestión así:

"Yo fuí y le di el desayuno al ayudante y el ayudante se lo dio al maquinista y entonces el maquinista le dio otra vez las tazas al que le llevé el desayuno y entonces él me las dio a mí y yo me fuí a la parte atrás de la máquina y él prendió la máquina y le dio pa'lante y yo, como iba pa'lante crucé y le dio a la máquina y me tumbó".

En contrainterrogatorio testificó el lesionado que el tractor estaba con la pala para la casa de su padre de donde el lesionado salió con el desayuno para el maquinista del tractor; que se acercó por la izquierda; que cuando le devolvieron las tazas se fue "a la parte atrás a recoger los trastes y ponerlos bien"; que entonces el conductor dio marcha al tractor "para

el frente y cuando yo ví que dio para el frente yo fuí a cruzar y de repente le dio para atrás a la máquina y me tumbó". Luego dijo "Echó para alante un poquito y cuando yo fuí a cruzar dio para atrás"; que se movió hacia adelante como ocho pies. Más adelante testificó que "Yo la vi que partió para alante y entonces, cuando yo miré, cuando yo fuí a cruzar él dio para atrás; venía para atrás entonces y me tumbó". "Yo me fuí allí a la parte de atrás porque ella [el tractor] iba para alante"; que antes del accidente el tractor hizo varios viajes para atrás y para el frente cargando y empujando material; que después que tomaron el café sólo hicieron un movimiento para el frente y para atrás que ocasionó el accidente.

Testificó el conductor del tractor, Ortiz Jiménez, que el día del accidente él conducía el tractor en la finca de Blas Colón en el servicio que el municipio presta de hacer caminos en las fincas; que el municipio da el servicio de la máquina y el agricultor da la comida; que cuando llegó el lesionado paró el tractor mirando hacia la casa; que el lesionado llegó por el lado derecho que es el lado del talud donde estaba su ayudante quien recibió el café y se lo dio al testigo quedándose el menor en tierra; que luego de tomar el café, siguió trabajando conduciendo el tractor hacia atrás y hacia adelante como unos 10 a 15 minutos hasta que ocurrió el accidente; que hicieron esa operación varias veces luego de tomar el café y antes de que ocurriera el accidente; que en una de las ocasiones que iba para atrás el ayudante que "Estaba de espalda hacia la máquina o sea de frente para allá para la cerca" le llamó la atención del accidente; que luego de tomar el café no vio al menor cuando salió del sitio hasta que lo vio debajo de la máquina cuando el testigo apagó el motor porque oyó la gritería provocada por el accidente; que la máquina se mueve más despacio hacia atrás que hacia adelante.

Es evidente que hubo conflicto entre el testimonio del menor y el del conductor del tractor en cuanto a dos aspectos

fundamentales de los hechos que dieron lugar al accidente, es decir, en cuanto a si el accidente ocurrió durante la primera vez que el tractor fue conducido hacia atrás luego que su conductor terminó de tomar el café y con respecto a si el tractor volvió hacia atrás de repente. Es, por lo tanto, necesario examinar toda la prueba para determinar si la conclusión del tribunal de que el accidente ocurrió la primera vez que el tractor fue conducido súbitamente hacia atrás luego del desayuno y que el accidente se debió a la exclusiva culpa y negligencia del conductor del tractor, representa el balance más racional, justiciero y jurídico de la totalidad de la evidencia, como dijimos en *Sanabria* v. *Sucn. González*, 82 D.P.R. 885, 997 (1961), y reafirmamos en *Maryland Casualty Co.* v. *Quick Const. Corp.*, 90 D.P.R. 329 (1964). Creemos que no, por las razones que pasamos a exponer.

En primer lugar, el elemento de impetuosidad, precipitación y de lo inesperado e imprevisto de la marcha hacia atrás del tractor inmediatamente antes del accidente no apareció en la versión original del accidente que ofreció el menor.

En segundo lugar, el menor declaró que antes del accidente vio que el tractor trabajaba yendo para el frente y luego para atrás, cargando y empujando material en forma conocida como realiza sus operaciones ese tipo de tractor; que cuando él se acercó al tractor, la pala de éste, o sea, su frente daba hacia la casa de donde él salió y esto lo confirmó el conductor del tractor. Luego el lesionado, en vez de retirarse del lado del tractor hacia adelante para ir a su casa, en cuyo caso lo hubiera visto el conductor, inexplicablemente se fue a la parte de atrás del tractor "a recoger los trastes y ponerlos bien". Es lógico suponer que terminado el desayuno, el conductor reasumió su trabajo de conducir el tractor hacia adelante y hacia atrás y que esto lo tenía que anticipar el lesionado, pues lo había visto y sabía que así trabajaba el tractor. Como el lesionado necesariamente tuvo que andar a lo largo del tractor para ir a la parte de atrás del mismo y

que, mientras tanto, el conductor reanudó su trabajo, no parece posible que el accidente ocurriese la primera vez que el tractor vino hacia atrás luego de terminarse el desayuno. Tampoco parece creíble que la conducción hacia atrás fuese "súbitamente" como la calificó el tribunal, pues no se adujo razón alguna que justificase concluir que en la ocasión del accidente el tractor se condujese hacia atrás en forma distinta a la que corrientemente se hace, o sea, más despacio hacia atrás que hacia adelante. A nuestro juicio, lo que la prueba demuestra es que tan pronto terminó el conductor de tomarse el café, reanudó la marcha típica del tractor hacia adelante y luego hacia atrás y que el menor lesionado, por una reacción más bien hija de la juventud, resolvió cruzar por detrás del tractor y así trató de hacerlo cuando éste se movía hacia adelante, con tan mala suerte que antes de terminar de cruzar, el tractor al volver hacia atrás lo alcanzó, lo tumbó, lo arrolló y le produjo las lesiones que dan lugar a su reclamación. No creemos que el conductor fue negligente al dar marcha hacia atrás al tractor sin mirar en esa dirección "conociendo de la presencia del menor en el lugar donde se realizaba el trabajo". Si vio al menor al lado del tractor con frente a su casa de donde aquél vino, era de suponer que el menor regresase a su casa procediendo hacia adelante. Nadie podía suponer que el menor se dirigiese a la parte de atrás de la máquina y mucho menos que cruzase por allí mientras el tractor era conducido en su operación normal y corriente que obviamente no exige el que el conductor mire hacia atrás cada vez que hace cejar al vehículo como parte natural de su tarea. A mi juicio, el accidente en cuestión fue una ocurrencia desgraciada más bien ocasionada por la imprudencia de un joven de 16 años de edad, que a pesar de saber y conocer cómo operaba el tractor en cuestión trató de cruzarle por detrás en uno de sus movimientos hacia adelante siendo lesionado por la máquina al alcanzarlo en el movimiento de ésta hacia atrás, cuando el menor no había terminado de

cruzar. Es posible que el menor iniciare el cruce muy tarde luego de estar la máquina en movimiento hacia adelante, o que calculase mal la distancia que el tractor sería movido hacia adelante, o que en esa ocasión precisa se movió en esa dirección menos distancia que la usual, de· manera que el menor tuvo menos tiempo del que esperaba para cruzar al paso o ritmo con que lo intentó.

Por las razones previamente indicadas, a mi juicio ha debido revocarse la sentencia dictada en este caso y dictarse otra declarando la demanda sin lugar.